Good morning. May it please the court. Mr. Weckman appeals his conviction for bank robbery after a jury trial. He raises three challenges to his trial on appeal. First, the district trial should have been severed from his co-defendant, Ms. Nelson. Second, the intimidation instruction was an incorrect statement of the law and requires a new trial. Finally, a mistrial was warranted after a juror gave the FBI case agent a medal in the middle of trial. I hope to discuss each issue if time allows. First, the district court erred in granting the motion for mistrial, which was essentially a motion to sever, after it was clear that Ms. Nelson and Mr. Weckman had mutually antagonistic defenses. The defenses were mutually antagonistic and that the jurors had to disbelieve her defense in order to acquit Mr. Weckman. And just briefly, there was no conspiracy charge in this case. Mr. Weckman and Ms. Nelson were charged as co-defendants. The general theory was that Mr. Weckman committed the robbery and Ms. Nelson was the getaway driver. And as the trial progressed, it was clear that Ms. Nelson was pushing a theory of defense that Mr. Weckman committed the robbery to help another woman, Brandy Bennett, and that those two were conspiring together to commit this robbery and that Ms. Nelson was simply duped into helping. And Ms. Nelson did not just rely on the government's evidence. Ms. Nelson called two witnesses up her own, including Brandy Bennett herself. She brought in evidence that the government otherwise would not have, that the two were texting the day of the robbery, that Ms. Bennett was asking if Mr. Weckman was okay, that some of the texts from Ms. Bennett to Mr. Weckman were deleted off his phone from the day of the robbery, that the two were talking about getting money, and that Ms. Bennett had a child with needs and she had set up a GoFundMe for an assistant speech device when there was evidence that the robber had gone into the bank and mentioned that he had a son that was in the hospital. Counsel, let me ask you, I know how thorough your work always is, did you find any reported cases from anywhere in a mistrial severance issue where the co-defendant was acquitted and it came up on a pardon? Because those cases would be very relevant. In other words, even if the initial severance is not an abuse of discretion, then you get the mistrial situation as the evidence unfolds, the trial court is not persuaded, and the jury does just what it was warned about, and now how have appellate courts handled it? I haven't looked, I wondered if you, I suspected you would look for them and wondered if you found anything. I wasn't able to find any, your honor, any specific on that issue. But I think that, again, having to establish prejudice, it's highly indicative of prejudice. When looking at these severance issues, things that courts must analyze are, it's the strength of the evidence. The evidence was much stronger against Mr. Weckman than it was against Ms. Nelson, admittedly. And obviously the jury believed that, and that she was acquitted outright while Mr. Weckman was convicted. And that's also consistent with the concern with severance, in that her defense was, he did it, Mr. Weckman did it, I was duped. And so the jury appears, by their acquittal, accepted that theory of defense, that yes, Mr. Weckman was the robber, and Ms. Nelson was just simply duped into participating. And this really kind of falls outside my review of severance case law. It seems to me there's kind of three general scenarios when people challenge severance. One, when there's a conspiracy, and conspiracies are generally even higher presumption of having, being tried together. The next kind of case you generally see is in a situation where drugs and guns are found in the car, and there's multiple individuals in the car, and they're all pointing the finger at each other. And the third type of case is like, I believe the Novak case, where it's a fraud, and everyone's saying, I didn't know what was going on, I didn't know there was any kind of criminality. This really doesn't fall into those three kind general scenarios that you have with severance. Instead, this is two individuals where they have very separate roles, as put forward by the government. And it's not just pointing the finger at each other. It's Ms. Nelson putting on her own case, stating that yes, he did it, and I was duped. So Mr. Weckman had to defend against both the prosecutor, who is saying he committed the offense, and she was there, albeit unwittingly. The limiting instruction that was provided was insufficient to overcome and undo the prejudice that Mr. Weckman suffered. There was the limiting instruction that said the evidence against each defendant should be considered solely against each defendant. But it didn't really get into what happens when the defense of the co-defendant is evidence against the co-defendant. I don't think this limiting instruction that was provided was clear or specific enough to let the jurors know that, okay, even if her defense is evidence against Mr. Weckman, don't consider it as part of his case. Only consider it as part of whether she should be exonerated or she should be acquitted. So our position is that it is insufficient to overcome the prejudice that occurred. Turning next to the jury instruction challenge, the intimidation instruction. Let me just stop and give you a chance to react to my reaction to this situation, which would be if the motion to sever was, there's no abuse of discretion before the evidence came in, and then the evidence comes in and raises this problem of the I was duped, or I'm innocent, and the I'm innocent claim suggests that the co-defendant is guilty. It would seem to me that the test ought to be on mistrial. Could the jury have acquitted both? In other words, if the inconsistent defense required, if acceptance of the inconsistent defense required the jury to find the co-defendant guilty, then I think the position you're arguing is very powerful. But if the jury could, here it seems to me the jury could have found, Nelson thought she was just picking up a guy after, who's off on an innocent, doing whatever he's doing, and could have accepted her defense that I didn't know, I was not really duped, but I was innocent, could also have found that Wackman wasn't a robber, as he called for mistrial, doesn't it fall short? I would disagree, your honor. In these severance mistrial cases, courts talk about different kind of principles. The Flores case is one that's, you know, to disbelieve, to acquit one's defendant would require the jury to disbelieve the core of another's defense. But as far as you can't acquit both co-defendants, I think they couldn't in this because the crux of Ms. Nelson's defense was he did it, he did it, and I was duped. And so for them to accept her argument is admitting and acknowledging that Mr. Wackman did commit this offense, especially since part of her... You're basically saying even if my standard is right, this case fits the bill. Yes, your honor. Okay. Go ahead with the other other points. I didn't want to drag this out. Okay, I'll turn now to the intimidation instruction. It was a misstatement of the law in that the instruction stated that, kind of stated almost two inconsistent things. In the first, it stated force, violence, or intimidation, and then it appears to give a subjective test in that put someone in fear of bodily harm. But under the case law and the model jury instructions, intimidation is an objective test, and it requires that an ordinary person would be put in fear of bodily harm. Now, this instruction provided gave both this subjective test and the objective test. And for that reason, it was an error and it requires reverse north hand for a new trial. And it was not harmless error in this case because one of the main defenses beyond... I mean, there was multiple arguments put forward clearly, but beyond the dangerous weapon was it wasn't me. And even if you could prove it was me, there was no intimidation. And the evidence was weaker than most cases of robbery on intimidation. The whole robbery lasted less than a minute. The device that was placed onto the counter, even the tellers and the individuals in the bank said, well, it just kind of looked like water bottles taped together. Nobody, you know, the witnesses didn't testify. I thought it was a bomb. You know, it looked like a dangerous device. Nothing like that. The proper self-apologizing kept saying was sorry. And here, it's especially problematic to give that subjective test because looking at the surveillance videos from the robbery, it's obvious that one of the tellers was kind of, you know, after the robber left, one of the tellers seemed scared. So if the jury is given that subjective standard and they see that video, it's met. It should be an objective. Finally, I'll just quickly discuss the mistrial was required based off the juror giving the FBI agent a case medal at the end of trial. This stems from the sixth right to impartial jury, free from improper influences or biases. Now, this is a lot different from these improper conduct cases I've generally reviewed and seen, and that this was towards the end of trial where a juror on the trial affirmatively decides I want to bring this case agent a medal and give it to the case agent who's not just a witness, but sitting next to the prosecution throughout the trial and thank him for his service and give him a thumbs up. Here, the district court judge did question this juror who was ultimately dismissed about this interaction, but it wasn't necessarily credible. The trial attorney pointed out because first off, this is a pretty egregious violation of the admonition given by the district court, and second, he denied giving a thumbs up, whereas someone on the co-defendant's defense team indicated that there was a thumbs up that was given. The questions that were given to the district court, the remainder of the jurors didn't really get to the heart of what happened. There was questions, they didn't specify who, the court didn't specify the witness that was involved in the improper interaction and just asked if they had any interaction with the dismissed juror. There wasn't a question of did they discuss giving a medal? Did they discuss that they planned to do this? It was just general questions of their views on law enforcement. Our position is that this required a mistrial, and because it was not granted, it requires a trial. If there are no further questions, I'll reserve the remainder of my time. Thank you. Mr. Call? May it please the court, counsel, I will try to address all three of these issues this morning. All three of the issues have in common the fact that they are reviewed for abuse of discretion, although in the government's view, the jury instruction really ought to be reviewed for plain error. Regarding the challenge coins that the juror gave to the FBI agent on the morning of the third day of trial, the district court had an obligation to do three things. One, to inquire about what happened. Secondly, to give all parties the opportunity to participate. And thirdly, to determine whether the incident was prejudicial. And that's a matter, again, within the district court's discretion. After Judge Pratt made that inquiry, the juror in question testified. The judge then brought the rest of the jurors back, had the opportunity to observe them, engaged in a colloquy with them. The attorneys for the parties declined any additional record. At page 492, Judge Pratt made the finding there was no indication that any of the behavior had rubbed off on any of the other jurors. In the government's view, that's not an abuse of discretion. Judge Pratt handled it in the way he's supposed to handle it, and the conviction should not be reversed on that basis. Regarding the jury instruction issue, that's really, it's a, well, first of all, the objection that was made at trial was an objection to the second paragraph of the instruction. It is now morphed with a complaint about the first paragraph. The second paragraph and the third paragraph both make abundantly clear that the term intimidation means doing something that would make an ordinary person fear bodily harm, that would cause a reasonable person under these circumstances to be fearful of bodily harm, particularly given the high plain error standard and even an abuse of discretion, given the stock instruction, was not prejudicial because it was an accurate statement of the law. The government agrees that... Wait, counsel, did the defense present a proposed instruction? The defense did present a proposed instruction, which is somewhat similar. The defendant's instruction included that same second paragraph. Defendant's instruction is at court's docket 102, proposed instruction number 11. The defense included the first... Don't tell me about paragraph two. Tell me, was the proposed instruction the same on paragraph one, or would it have corrected what is alleged on appeal to be error? The defense instruction is the first half of paragraph one. Paragraph one, which is based on O'Malley's pattern instruction, says force and violence by intimidation means either the actual use of physical strength or actual physical force, in other words, defining force and violence, and then, or doing something that would make, put someone in fear of bodily harm, that is, giving the discussion of intimidation... Counsel, my question goes to whether it's to be the error on appeal. I would say that's enough to preserve the appellate issue. And you haven't answered my question, because I haven't read it. I've just asked you, you know, would the proposed instruction have cured what's alleged to be the error? If so, that's sufficient to preserve. Well, the government's view is, would to be to respectfully disagree with the objection... You're wasting time, frankly. Why don't you talk about the substance? Well, the one thing I will mention is the discussion of the evidence of intimidation, and Mr. Weckman... No, I mean the substance of the instruction issue. It's an ordinary person theory, or standard, it's a reasonable person... Do you have that paragraph in front of you? Of the court's instruction, or... The requested instruction. The requested... Yes, I do. Just read it, please. The first paragraph. In paragraph one, the phrase, by force and violence, means the use of actual physical strength or actual physical violence. The term intimidation means doing something that would make an ordinary reasonable person fear bodily harm. That second paragraph, tracking what the court gave. Thank you. If there's any other questions on the jury instruction issue, I'll move on to the mistrial request that was made at the close of the evidence. Ms. Nelson's attorney posited a number of theories in closing argument as to why the government's evidence had, in her view, fallen short. It takes 10 pages into the argument before she even mentions Brandy Bennett. Whether or not the defense has some antagonism to them does not, in and of itself, require a severance or mistrial. The court really needs to answer three questions. One, were the defenses really mutually antagonistic, or is there a way to reconcile them? Secondly, did the district court abuse its discretion in not granting this mistrial at the close of the evidence? Thirdly, did this result in clear prejudice? That, in turn, allows the court to look at the weight of the evidence, the strength of the government's evidence against Mr. Weckman, to assess whether this failure to sever caused clear prejudice. By the time we got to the end of the trial, Mr. Weckman's defense was one of identity. Ms. Nelson's was one of knowledge. As to the issue of identity, there was no question by the time we got to the end of trial that Mr. Weckman had been the person who bailed out of the Explorer on Trowbridge Street, that he was carrying the red and black bag that contained the lube from the bank robbery. There was no dispute that the bank robber's outer clothing were contained in the back of the Explorer with the back seat down. There was no dispute that he said, you got me, when he was arrested moments later on Phillips Street. This whole incident, from the time of the robbery to the arrest, last maybe nine or ten minutes. Mr. Weckman's theory at trial was that there was some third person involved who somehow also was in that Explorer and bailed out either with or before the time Mr. Weckman did. That was a highly speculative and incredible theory, given that strength of the government's can be no finding of clear prejudice, even if the court finds and the government would disagree that these defenses are mutually antagonistic. The defense really boiled down to the idea that there was a third party misdemeanor, maybe another individual who had advanced knowledge of the to Mr. Weckman's involvement in the robbery, and the evidence that the jury found fell short regarding Ms. Nelson's involvement in the robbery. Unless the court has further questions, I would yield the balance of my time. I guess what comes to mind is if the thrust of Ms. Nelson's evidence was he did it, why shouldn't we remand for a new separate trial for Mr. Weckman? Because the evidence against Mr. Weckman was overwhelming. Well, then prove it again. There's a policy in favor of joint trials, and just thinking of the practicality of this, you're going to put the courts in a position of having to grant 11th hour mistrials when there's no reasonable interpretation of the evidence that would lead a reasonable jury to find Mr. Weckman not guilty. It strikes me and might inspire the district courts to inquire a little more Mr. Weckman. Inquire more rigorously about whether the defenses are going to be antagonistic. Mr. Weckman did not file a motion to sever. Ms. Nelson filed a motion to sever early on raising a... I don't care who files the motion. The inquiry, either one of them can file, and there's an inquiry into whether the motion to sever should be granted. Except when it was raised with the court, it was raised in the context of a Bruton issue affecting Ms. Nelson. It did not raise... Counsel, I was reacting to your assertion that if he gets a new trial, that'll cause a mammoth increase in the number of mistrials required. I was saying not necessarily, if it inspires judges to be more thorough when the initial motion to sever is made. Looking at this trial, looking at this case, I don't think this defense necessarily gelled until shortly before we got to trial and developed based on the evidence as it came in a trial. The witnesses, the victims, everybody involved in the process have an expectation of some finality here. As I say, absent some showing of clear prejudice, that burden ought to be on Mr. Weckman. We think that issue ought to be rejected. That would conclude my comments again, unless the court has further questions. Very good. Thank you. Let's quick have some rebuttal time of yes. Yes, indeed. I want to start initially with the idea of the defenses by the two co-defendants and how they differed and whether they were mutually antagonistic. This was, as the evidence came in, and even as the parties argued and Ms. Nelson argued, to acquit them both, they would have had to believe that the government didn't prove that was involved with the robbery. That was just not going to happen with the government's case. Nelson essentially said, this was the robbery, this was the car, I picked up Mr. Weckman, I just didn't know. They couldn't acquit both of them under the facts and the theories that were presented both by the government and Ms. Nelson. And I'm sorry, I was muted. I'm much more interested in the question of clear prejudice here. Because if we assume that there's antagonism, what the government is arguing that okay, take away all that evidence and see what's left standing and no rational juror could have arrived at a different conclusion, the verdict stands. And why are they wrong about that? So looking at the different factors that courts lay out for the prejudice analysis, one, I think it strengthens the evidence. The evidence was weaker against Ms. Nelson. And I think it's, this isn't just a hypothetical argument I'm making on appeal that, oh, I think it was weaker. The jury obviously accepted that because she was acquitted outright. So now we have something that the court can really say, no, we know that this occurred. The limiting instruction, like I said, just wasn't sufficient to overcome any kind of prejudice in this case. And as far as practical, how it happened, defendants have a right to discovery of the government in the case they're going to put on pretrial. You can go and you can interview witnesses. You can think of your theory of defense. Here, obviously, Mr. Weckman doesn't have any right to that kind of information pretrial as far as what Ms. Nelson's going to say. He was really having to do that on the fly. He can't go out and say, oh, she's putting on this evidence now. I need to talk to this person who could maybe dispute it or anything like that. And even worse in this case, Mr. Weckman's closing argument was before Ms. Nelson. So he generally at this point had an idea of what her theory of defense was. He didn't have any opportunity to respond to what Ms. Nelson's defense was, which was essentially a second prosecution of Mr. Weckman. Did you ever ask for an opportunity at serve or bottle based upon the second proffered closing argument? No, Your Honor. Trial counsel did not do that. There are no further questions. We would ask this court to reverse and remand for a new trial based on the arguments made today and in the brief. Thank you, counsel. Case has been well-briefed in argument and we will take it under advisement.